United States Courts
Southern District of Texas
ENTERED
DEC 5 - 2006
Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON, DIVISION

| | | |
|---|---|---|
| EMILE GREEN | § | |
| | § | |
| VS. | § | C.A. No. G-05-423 |
| | § | |
| | § | |
| SEARIVER MARITIME, INC. AND | § | |
| S/R MARE ISLAND | § | RULE 9(H) ADMIRALTY |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This cause came on for a non-jury trial on August 7, 2006, the Honorable Samuel B. Kent presiding. The Court carefully considered all trial testimony and exhibits. The Court has further carefully considered the Pre-Trial Order, together with all relevant attachments, all pleadings on file, all post-trial submissions, particularly including the proposed findings of facts and conclusions of law from both sides, and the trial briefs. The Court has carefully considered the transcript of proceedings filed post-trial, together with all of the deposition submissions of each party. The Court has carefully considered applicable statutory and case law, particularly that of the United States Court of Appeals for the Fifth Circuit. On the basis of its own careful observations during trial, the making of credibility assessments of all witnesses appearing live at trial, or by deposition, and the detailed consideration of all of the above materials, the Court now enters its Findings of Facts and Conclusions of Law.[1]

**I.**

**Introduction**

[1] The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

This cause was originally filed on July 29, 2005. Plaintiff alleges maritime personal injuries and asserts admiralty claims pursuant to FED. R. CIV. P. 9(h). Plaintiff asserts a negligence claim pursuant to the Jones Act, 46 U.S.C. § 688, and a claim for unseaworthiness, pursuant to the General Maritime Law of the United States. Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1333 and FED. R. CIV. P. 9(h). Venue is properly before this Court and is uncontested. On August 1, 2006, a docket call was held before the Court, at which counsel of record for both sides announced ready. On August 7, 2006, counsel for both sides appeared and announced ready for trial and proceeded to try the case to conclusion. At the end of trial, the Court established, with the consent of counsel, a firm schedule for the submission of all relevant post-trial materials. All such timely submissions are now properly before the Court, and this case is now ripe for the Court's final consideration.

## II.

## Findings of Fact

(1) This case involves shoulder injuries sustained by Emile Green aboard the S/R Mare Island.

(2) At the time of trial, Plaintiff was 47 years old and living in California. Plaintiff grew up in California, but did not graduate from high school. Instead, Plaintiff opted for a career at sea.

(3) Plaintiff began working for Defendant SeaRiver in 1996. About a year before the accident, Plaintiff joined the crew of the S/R Mare Island ("Mare Island") as a deckhand. Plaintiff's work aboard the Mare Island regularly involved the typical labor and physical activities of a seaman. At all relevant time times, SeaRiver Maritime, Inc. ("SeaRiver") owned and operated the S/R Mare Island. At all relevant times, Green was employed by SeaRiver as a Jones Act Seaman. Green

worked at the relatively low-level position of deckhand on the Mare Island. One of Mr. Green's duties was to tie up the Mare Island to docks in the San Francisco Bay.

(4) The Mare Island could tie up to the dock using a 1-line tie up or a 3-line tie up. Both operations can require a deckhand, like Plaintiff, to throw the mooring lines from the vessel to the dock. The decision on whether to do the 3-line tie-up or the 1-line tie-up ultimately rests with the Captain.

(5) On or about September 13 2005, Plaintiff was ordered to tie-up the Mare Island to the dock using the one line tie-up although the SeaRiver Captain admitted that it was safer to perform a three-line tie up. This ostensibly was because the three-line tie up was no longer a viable option since SeaRiver's reduction in force reduced the crew from two deckhands to a single deckhand. In performing the one line tie up, Plaintiff had to use a line that had come from a tanker and that was too large for a tug like the Mare Island. Further, the line in question was old, and very limp, and was too heavy to throw when wet. Despite the fact that the line should not have been used in mooring operations, Green was ordered to throw this limp and heavy line from the deck to the dock. The line was wet when Plaintiff threw it. The Captain never instructed Green not to throw the line when wet.

(6) After Plaintiff threw the line, he immediately felt pain in both his shoulders. As a result of this throw and the resulting pain, Plaintiff underwent a long course of medical treatment. He had relatively minor surgery to his left shoulder, and the treatment for Green's right shoulder injury involved a surgery to remove the bursa from under Green's left acromion, shaving off part of Green's collar bone to relieve pressure in his subacromial joint, and repairing a superior labral anterior-posterior lesion. Even Defendants' IME doctor, Dr. Robert Fulford, an old-school, but thoroughly likeable and

believable witness, agreed that the treatment done for these injuries was reasonable and necessary. Subsequently, he has had significant arthritic changes and continues to experience pain and limitations of strength and motion.

(7) Mr. Green's injuries and resulting treatment were proximately caused by the line throwing incident on or about September, 13, 2005. Mr. Green's injuries would have been prevented if SeaRiver had used ordinary care. SeaRiver should have: (1) used a properly conditioned and proper size line; (2) warned Mr. Green not to throw the line when wet; and/or (3) used the 3-line tie-up. Importantly, Captain Schub admits that he was in charge of the crew's safety, knew that Mr. Green had problems tossing the line, and that the line should not have been tossed. Knowing all this, Captain Schub still ordered Green to toss the limp and heavy line which ultimately led to Green's injures. The Court, taking all of these factors into consideration, firmly believes that this is a case of clear and unequivocal negligence. The Court finds Defendant negligent in failing to instruct Green in the details of his work, in allowing him to proceed in hazardous fashion under the direct supervision of a Captain who knew better and yet failed to take any steps whatsoever to correct the manner in which Plaintiff was undertaking his work, and the failure of the Captain to ensure safety on the job. On that basis, the Court assesses seventy-five percent (75%) one hundred percent (100%) negligence to Defendants, and twenty-five percent (25%) negligence to Plaintiff for not better providing for his own safety.

(8) The Court finds that the S/R Mare Island was unseaworthy under the circumstances for having a line that was too limp and too large for tossing, especially when the line was wet. Subsequent to the accident, the Court notes that SeaRiver removed the large tanker line and used lighter lines for tossing due to Mr. Green's injuries. Consequently, the Court finds that Plaintiff has met his burden to establish an unseaworthy condition aboard the vessel, by preponderance of the evidence.

(9) The Court finds that Defendant has not unreasonably withheld maintenance or cure in the past and that any such past or future claim is subsumed by Plaintiff's offer of uncontroverted past losses, and his proven future damages. Thus, the Court declines to award any further maintenance or cure, beyond the medical losses considered herein. The Court also finds that any disability benefits received by Plaintiff were fringe benefits and a collateral source under the Fifth Circuit's factors set forth in *Phillips v. Western Co. of N. Am.*, 953 F.2d 923, 932 (5th Cir.1992). *See also SeaRiver Maritime Inc. v. Pike*, 2006 WL 1553264 (Tex.App.-Corpus Christi, 2006).

(10) Since September 2005, Green has remained off duty and is attempting to convalesce. Plaintiff's medical restrictions will prevent him from returning to work at sea. Nevertheless, the Court finds that Plaintiff can undoubtedly do different types of work. He has demonstrated a lifetime of hard work and diligence, and the Court has no doubt that he will so apply himself similarly in the future, despite a limited formal education since Plaintiff did not graduate from high school. However, the Court specifically finds, based on overwhelming medical testimony, and its own practical experience in presiding over literally hundreds of similar sorts of cases, that it is highly unlikely that the Plaintiff will ever return to work in the Merchant Marine.

(11) The Court finds that the Plaintiff can earn at least Eight and 00/100 Dollars ($8.00) per hour, once he has recovered, which would yield an annualized, residual earnings potential of $16,000.00 per year. Taking this amount into account as well as an appropriate discount rate, future compensation growth, loss of fringe benefits, work expenses, and loss of household services, all in keeping with Defendant's excellent economist's analysis, the Court finds that Green's total past and future economic loss is $390,765.00.

(12) Plaintiff's past unpaid medical expenses are $30,000.00, which the Court finds reasonable. The Court finds that based upon the testimony of Dr. Zoran Cupic, Plaintiff's treating orthopaedic surgeon, Green will experience roughly $1,000.00 per year in episodic, analgesic medical care throughout the remainder of his life and $9,000.00 in physical therapy costs. The Court finds that Plaintiff has a life expectancy of 23 years. 23 years multiplied by $1,000.00 per year equals a total of $23,000.00. That amount plus $9,000.00 for physical therapy equals $32,000.00, which the Court finds is reasonable compensation for reasonably medically probable future medical expenses.

(13) The Court finds that Plaintiff has undergone a substantial therapy and medication regime, and has diligently tried to get back to work. The Court finds that Plaintiff is significantly disabled, that he has injuries which will last him a lifetime, and that he has experienced substantial subjective losses, including loss of physical abilities, loss of the enjoyment of life, pain and suffering in the past and in the future, as well as significant disfigurement. The Court finds that all of these losses, both subjective and objective, are the direct and proximate result of the 75% negligence of Defendants. The Court finds that a fair and reasonable amount for Plaintiff's past subjective losses is $150,000.00, and that the value of his future reasonably probable subjective losses, to occur over his lifetime, equal an additional $75,000.00.

(14) Therefore, the Court finds that the total of Plaintiff's past economic losses, future economic losses, future reasonably probable medical expenses, and past and reasonably probable future subjective losses equals a total of $677,765.00, which of course must be discounted 25% for Plaintiff's own negligence. Therefore, the Court finds and awards net damages of $508,323.75.

(15) Additionally, the Court finds that Plaintiff is entitled to pre-judgment interest at the rate of four percent (4%) per annum, together with five percent (5%) future interest until time of

payment in full of this Judgment, together with all properly taxable costs of court.

**III.**

**Conclusions of Law**

1. The Court concludes this is a case of admiralty and maritime jurisdiction, properly tried before the Court without benefit of a jury. 46 U.S.C. § 688, FED. R. CIV. P. 9(h). Venue and jurisdiction are proper. 28 U.S.C. § 1333.

2. At the time of his injury, the Court concludes Plaintiff was a "seaman" as that term is legally defined under the Jones Act, and was employed by Defendant SeaRiver.

3. The Court concludes that the injuries and consequent damages proximately sustained by Green were 75% proximately caused by Defendant SeaRiver in negligently failing to act as a reasonable maritime employer under like circumstances, and 25% by the negligence of Plaintiff, in failing to provide for his own safety.

4. The Court concludes that the vessel was unseaworthy, and that such unseaworthiness was a proximate cause of Plaintiff's injuries.

5. The Court concludes that Green has proximately sustained net damages of $508,323.75, based upon its finding of 75% negligence of Defendants, as well as its finding of unseaworthiness. In addition, Plaintiff is awarded pre-judgment interest through the date of this Judgment, at the rate of four percent (4%) per annum, and Plaintiff is further awarded post-judgment interest until this Judgment is fully satisfied, in the amount of five percent (5%) per annum.

6. To the extent that any foregoing Finding of Fact constitutes a Conclusion of Law, it is adopted as such. To the extent that any foregoing Conclusion of Law constitutes a Finding of Fact, it is adopted as such.

IT IS SO ORDERED.

DONE at Galveston, Texas this the 5th day of Dec., 2006.

Hon. Samuel B. Kent
United States District Judge